IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRACI STOVER, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 18-cv-00042 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| MENARD, INC., | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Traci Stover was visiting a Menards store with her husband and grandson when she tripped and fell while in the checkout aisle. Two weeks before her visit, Stover had undergone neck surgery and she was wearing a neck brace the day of her visit. Because the neck brace restricted her vision, Stover failed to see a candy box jutting out from a display shelf in the checkout aisle. While assisting her husband by pushing together two shopping carts, Stover ran into the protruding candy box and fell. Stover brought the instant premises liability action against Defendant Menard, Inc. ("Menards") to recover for the injuries she sustained in her fall. Menards now moves for summary judgment (Dkt. No. 26), claiming that the candy box was an open-and-obvious danger, Menards had no notice of the unreasonable danger presented by the candy box, and Stover has no evidence that the candy box caused her fall. For the reasons that follow, the Court denies Menards's motion.

**BACKGROUND**

On November 11, 2015, Traci Stover visited a Menards store in Morris, Illinois with her husband and grandson. (Pl.'s Resp. to Def.'s Statement of Material Facts ("PRSMF") ¶ 16, Dkt. No. 32.) Two weeks earlier, Stover had undergone neck surgery. (*Id.* ¶ 17.) After her surgery, her

doctor placed certain restrictions on Stover's activity. (*Id.*) According to Stover, she essentially "couldn't do anything." (*Id.* (quoting Def.'s Statement of Material Facts, Ex. B at 19, Dkt. No. 30-2).) Just before visiting Menards, Stover had a doctor's appointment. (*Id.* ¶ 18.) When the doctor found out that Stover would be going to Menards after the appointment, he advised her to limit her activity while her husband and grandson shopped. (*Id.*) That day, Stover was wearing a neck brace and a right-knee brace—both prescribed by her doctor. (*Id.* ¶ 24.)

Stover elected to enter the Menards store with her husband and grandson instead of remaining in her car because she decided she could use some exercise. (*Id.* ¶ 21.) For a period after her neck surgery, Stover used a walker because her neck brace made it difficult for her to see what was below her. (*Id.* ¶ 18.) While Stover had been able to walk without a walker for at least a week prior to her trip to Menards, that day she used an empty shopping cart to steady herself. (*Id.* ¶¶ 18, 21.) Stover and her grandson entered the store first while Stover's husband parked the car. (*Id.* ¶ 19.) Her grandson escorted Stover to an area near the front of the store so she could rest, as recommended by her doctor. (*Id.* ¶¶ 19–20.) Eventually, Stover's husband went with her grandson to shop while Stover remained at the front of the store, sitting on a box by the cash registers. (*Id.* ¶¶ 20, 22.)

After Stover's husband and grandson completed their shopping, they met back up with Stover at the front of the store. (*Id.* ¶ 26.) The three then proceeded to the cash registers to check out. (*Id.*) Stover, her husband, and her grandson each entered the checkout area with a shopping cart. (*Id.* ¶ 27.) As they approached the checkout aisle, there was nothing obstructing their view. (*Id.* ¶¶ 29–31, 37.) Stover's grandson was the first to place the contents of his cart onto the conveyer belt, followed by Stover's husband, with Stover and her empty cart bringing up the rear. (*Id.* ¶ 28.) After her husband began placing items on the conveyer belt, Stover tried to be helpful

by pushing her empty shopping cart into her husband's cart so as to consolidate the two. (*Id.* ¶ 32.) According to Stover, she stood to the side of the two carts as she attempted to push them together. (*Id.* ¶ 33.) While attempting to consolidate the carts, however, Stover's right-knee brace got caught on a candy box overhanging the edge of a display shelf alongside the checkout aisle. (*Id.* ¶¶ 31, 35–36.) Stover then fell to the ground, causing a "big chaos." (*Id.* ¶¶ 32, 35.) As a result of her fall, Stover suffered "bodily injury and mental anguish and suffering." (Compl. ¶ 7, Dkt. No. 1-1.)

Stover subsequently filed the present lawsuit alleging that Menards's negligence in maintaining the area around the checkout aisle caused her injuries. This action was originally filed in Illinois state court, but Menards removed it here on the basis of the diversity of citizenship of the parties. (Notice of Removal, Dkt. No. 1.)[1]

## DISCUSSION

Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). Here, Stover contends that Menards was negligent in placing the candy box on the display shelf such that it protruded over the shelf's edge, thereby posing a tripping hazard to customers. To prove a negligence claim in Illinois, Stover must establish "the existence of a duty owed by [Menards] to [Stover], breach of that duty, and an injury proximately caused by that breach." *Clifford v. Wharton Bus. Grp., LLC*, 817 N.E.2d 1207, 1212 (Ill. App. Ct. 2004) (citing *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990)). Menards argues that it owed Stover no duty to protect her against an open-and-

---

[1] Stover is a citizen of Illinois while Menards is a citizen of Wisconsin. (PRSMF ¶¶ 1–2.) Moreover, Stover has admitted that she is seeking damages in excess $75,000. (PRSMF ¶ 5.)

3

obvious condition, and even if it did, Stover cannot establish that the candy box was the proximate cause of her fall. Menards also argues that no liability may be imposed against it because it had no notice of the unsafe condition.

### I. Duty of Care

Menards's primary argument for summary judgment is that the candy box was an open-and-obvious condition that weighs against imposing a duty of care. There are four factors that guide the duty analysis: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden on the defendant." *Bruns v. City of Centralia*, 21 N.E.3d 684, 689 (Ill. 2014). In Illinois, "a possessor of land owes its invitees a duty of reasonable care to maintain the premises in a reasonably safe condition." *Deibert v. Bauer Brothers Constr. Co.*, 566 N.E.2d 239, 242 (Ill. 1990). However, Illinois courts recognize the "open-and-obvious doctrine," which provides that "a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Bruns*, 21 N.E.3d at 689 (internal quotation marks omitted). While the open-and-obvious doctrine does not relieve courts from having to apply the traditional duty analysis, it does implicate the foreseeability and likelihood of injury factors of that analysis. *Id.* at 690.

A condition will be deemed open and obvious "where a reasonable person in the plaintiff's position exercising ordinary perception, intelligence and judgment would recognize both the condition and the risk involved." *Alqadhi v. Standard Parking, Inc.*, 938 N.E.2d 584, 587 (Ill. App. Ct. 2010). Whether a dangerous condition is open and obvious is often a question of fact. *Bruns*, 21 N.E.3d at 690. But, "where no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *Id.* In this case, the

4

Court concludes that there is no genuine dispute of material fact as to the open and obvious nature of the placement of the candy box.

The parties agree that the candy box was placed such that it was overhanging the edge of the display shelf. Moreover, while Stover asserts that she did not see the candy box before her fall (PRSMF ¶ 36), she does concede that there was nothing obstructing her view of the checkout aisle or otherwise diminishing the visibility of conditions in the area (PRSMF ¶¶ 29–31, 37). The fact that Stover did not actually see the condition does not mean that the condition was not open and obvious. Rather, the open and obvious nature of the condition "depends on the objective knowledge of a reasonable person, not the plaintiff's subjective knowledge." *Ballog v. City of Chicago*, 980 N.E.2d 690, 695 (Ill. App. Ct. 2012) (internal quotation marks omitted). And because the placement of the candy box posed a risk that a reasonable person could appreciate and avoid, it was an open-and-obvious danger.

In her opposition to summary judgment, Stover briefly disputes that the candy box was an open-and-obvious danger but does not actually advance arguments against that conclusion. Instead, she asserts that the "distraction exception" to the doctrine applies. *Bruns*, 21 N.E.3d at 691. Under the distraction exception, "even an open-and-obvious condition may still be unreasonably dangerous if the landowner should have foreseen that people would fail to notice or protect themselves against the condition because they had become distracted." *Lucasey v. Plattner*, 28 N.E.3d 1046, 1055 (Ill. App. Ct. 2015). Generally, the exception "involves a situation where the injured party was distracted from the open and obvious condition because circumstances required him or her to focus on some other condition or hazard." *Waters v. City of Chicago*, 966 N.E.2d 560, 566 (Ill. App. Ct. 2012); *see also Peters v. R. Carlson & Sons, Inc.*, 70 N.E.3d 196, 201 (Ill. App. Ct. 2016) ("The distraction exception to the open and obvious rule

applies where the possessor of land has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." (internal quotation marks omitted)).

Here, Stover argues that Menards should have foreseen that customers would be distracted from the hazard presented by the candy box while maneuvering shopping carts around the checkout area. On the other hand, Menards argues that Stover's act of consolidating two carts together was a "self-created distraction" that it could not foresee. A self-created distraction is one that is "solely within the plaintiff's own creation," and thus not something that a landowner reasonably can be expected to foresee. *Bruns*, 21 N.E.3d at 693–94 (internal quotation marks omitted). In other words, "when a plaintiff's attention is diverted by her own independent acts for which the defendant has no direct responsibility, the distraction exception does not apply." *Sandoval v. City of Chicago*, 830 N.E.2d 722, 729 (Ill. App. Ct. 2005). Illinois courts have usually found self-created distractions to be instances where the distraction was created by a plaintiff's own preoccupations. For example, talking on a cell phone, *Wilfong v. L.J. Dodd Construction*, 930 N.E.2d 511, 522 (Ill. App. Ct. 2010), monitoring a child, *Sandoval*, 830 N.E.2d at 728, placing an object in one's pocket or purse, *Barclay v. Club Foods, LLC*, No. 1-17-2332, 2018 WL 6438173, at *7–8 (Ill. App. Ct. Dec. 4, 2018) (unpublished), or looking elsewhere for reasons unrelated to the hazard presented by the open-and-obvious danger, *Bruns*, 21 N.E.3d at 693–94, are all situations that have been deemed self-created distractions. By contrast, the distraction exception usually applies in situations where the property owner "created, contributed to, or was responsible in some way for the distraction which diverted the plaintiff's attention from the open and obvious condition and, thus, was charged with reasonable foreseeability that an injury might occur." *Sandoval*, 830 N.E.2d at 729. The distraction must involve "special circumstances that

6

would cause persons to be distracted at the site of the plaintiff's incident, not commonplace distractions that could occur anywhere." *Peters*, 70 N.E.3d at 202.

According to Menards, Stover's distraction was created by her own choice to consolidate shopping carts in the checkout aisle, leaving her unable to pay attention to her surroundings. Menards emphasizes that not looking where one is going is not a distraction. However, this Court anticipates that Illinois courts would decline to find a distraction self-created where the distracted person was not looking where she was going because she was involved in activities inherent to shopping in a store like Menards. Indeed, one Illinois appellate court has specifically found that it should be reasonably foreseeable to a supermarket that "a customer pushing a shopping cart down a grocery aisle might momentarily forget the presence of an otherwise obvious obstruction in the aisle when maneuvering her cart to allow another customer to pass," such that the distraction exception applied. *See Figas v. Aldi, Inc.*, No. 1-15-1117, 2015 WL 9463700, at *3 (Ill. App. Ct. Dec. 23, 2015) (unpublished). Similarly, here, Menards could reasonably anticipate that shoppers would be maneuvering their shopping carts in the checkout aisle. Although it is perhaps less common for an individual to consolidate two shopping carts in the checkout aisle, "it is not necessary for a defendant to foresee the precise nature of the distraction." *Clifford*, 817 N.E.2d at 1217. Instead, it is sufficient that Menards could foresee that shoppers would be dealing with their shopping carts in any number of manners while waiting in the checkout line. That is especially true given that Menards has a practice of funneling people through the checkout aisles and in fact tries to divert all exiting traffic through the checkout aisles. (Def.'s Resp. to Pl.'s Statement of Material Facts ("DRPSMF") ¶¶ 7, 13–14, Dkt. No. 35.) Further, there is evidence in the record that it was foreseeable to Menards that some of their shoppers would have knee or neck braces that could add an extra layer of risk to their maneuvering of shopping carts. (*See id.* ¶¶ 6, 12.)

7

Finally, consolidating two shopping carts is not a commonplace distraction that could happen anywhere; it is specific to the act of shopping.

In short, the Court concludes that although the danger posed by the candy box was open and obvious, the distraction exception applies. And where the distraction exception applies, the first two factors of the duty analysis (reasonable foreseeability of injury and the likelihood of injury) are positively impacted. *Bruns*, 21 N.E.3d at 691. As to the third and fourth factors—the magnitude of the burden of guarding against Stover's injury and the consequences of placing the burden on Menards—Menards has not set forth any evidence at this stage. Consequently, there is a genuine issue of material fact as to whether Menards owed Stover a duty to protect against the open-and-obvious condition that precludes entry of summary judgment on that basis.

## II. Proximate Cause

Even if Menards owed Stover a duty, it nonetheless argues that she has not come forth with any evidence that the candy box was the proximate cause of her fall. Proximate cause consists of "two distinct requirements: cause in fact and legal cause." *Abrams v. City of Chicago*, 811 N.E.2d 670, 674 (Ill. 2004). "Cause in fact" refers to whether a defendant's conduct was "a material element and substantial factor" in bringing about a plaintiff's injury. *Id.* at 675. "Legal cause" is "largely a question of foreseeability;" specifically, the inquiry is focused on whether "the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Id.* (internal quotation marks omitted). Normally, proximate cause is a question of fact for the jury. *Id.* at 674. Nonetheless, "it is well settled that it may be determined as a matter of law by the court where the facts as alleged show that the plaintiff would never be entitled to recover." *Id.*

Menards argues that Stover has not produced evidence showing that the candy box was the cause in fact of her fall. However, Menards misconstrues Stover's contentions concerning the

cause of her fall. It seems to believe that Stover claims she fell because her knee brace got caught on a rip in the box. To the contrary, whether there was a rip in the candy box before Stover's fall is immaterial to the cause of the fall. Rather, Stover claims that she fell because the candy box protruded from the shelf into an area where a customer could inadvertently walk into it. Thus, it was not a rip in the box that caused her fall, it was the box itself. And there is evidence in the record from which a jury could conclude that the placement of the box was the cause in fact of Stover's fall. Specifically, Stover gave deposition testimony that she fell because her knee brace got caught on the box. (*See* Def.'s Statement of Material Facts, Ex. B at 52–53, Dkt. No. 30-2.) Consequently, the Court cannot grant Menards summary judgment based on its contention that there is no evidence that the candy box was the proximate cause of Stover's fall.

### III. Notice

Finally, Menards argues that it should be granted summary judgment because Stover cannot demonstrate that it knew or had any reason to know that the candy box would cause a customer to fall. For premises liability claims, the landowner can only be held liable where it "knew or should have known that the condition involved a reasonable risk of harm." *Lee v. Six Flags Theme Parks, Inc.*, 10 N.E.3d 444, 470 (Ill. App. Ct. 2014) (internal quotation marks omitted). There can be no liability "where there is no evidence of such knowledge." *Id.*

Here, contrary to Menards's contentions, there is sufficient evidence showing Menards knew about the overhanging candy box and its potential tripping hazard. Indeed, the manager of the Menards store testified during her deposition that "an item hanging over the edge of a [display shelf] would be more of a tripping hazard than if it was completely on the flat." (DRPSMF ¶ 3.) Moreover, the candy box would have been placed where it was by a Menards employee (*id.* ¶ 2), and it is not unusual for customers to be wearing knee and neck braces (*id.* ¶ 6). The manager's

9

testimony was echoed by Menards's general manager. (*Id.* ¶¶ 9, 11.) Because a jury could conclude that Menards had actual or constructive notice of the dangerous condition, summary judgment cannot be granted for lack of notice.

## CONCLUSION

For the foregoing reasons, Menards's motion for summary judgment (Dkt. No. 26) is denied.

Dated: May 28, 2019

ENTERED:

_____
Andrea R. Wood
United States District Judge